Peele, J.,
delivered the opinion of the court:
The question in this case arises on the claimant’s motion for leave to file an intervening petition and for amendment of the *463 ■findings so as to show that he was the commanding officer of a division in the fleet composing the naval force on the North Atlantic Station, of which the U. S. S. Ericsson formed a part, and participated in the engagement off Santiago, July 3,1898, and as such commanding officer is entitled to share in the bounty awarded to that vessel for the destruction of the Spanish vessels of war in that engagement.
By order of the Acting Secretary of the Navy, issued September 13,1897, the claimant was, on September 20 thereafter, detached from duty at the Columbian Iron Works, Baltimore, Md., and directed to proceed to Tompkinsville, N. Y., and assume command of the flotilla of torpedo boats on the Atlantic coast, composed of the Porter, Ericsson, Cushing, and Foote, and to make the Foote his flagship. He was also directed to be governed by instructions which were issued to him August 14, 1897, which, among other things,' directed that he was to proceed with the flotilla along the Southern coast to determine the practical value of torpedo boats in extended operations along our coasts, and also to determine the most effective way to work different types of boats together, etc.
Pursuant to the instructions so given, the claimant proceeded along the Southern coast to Port Tampa, Fla., and on January 19, 1898, by order of the Secretary of the Navy, he was directed to proceed with the flotilla under his command to the vicinity of Dry Tortugas and to report to the commanding officer of the North Atlantic Station on duty, with the squadron under his command. By virtue of that order the flotilla was absorbed into the North Atlantic fleet and ceased to exist as an independent command, though it appears to have continued as a separate organization until August 13, 1898, as hereinafter stated.
No other orders appear to have been issued to the claimant by the Navy Department prior to the engagement at Santiago, July 3, 1898; but under date of April 22, 1898, the claimant was directed by a message from the flagship to “keep one good serviceable torpedo boat ready to send messages to fleet;” and under date of June 12,1898, he was ordered to get the Foote and Ericsson ready to be convoyed; and under date of May 24, 1901, the Secretaay of the Navy, in a communica *464 tion to the court, furnished, the following transcript from the log book of the Ericsson:
“Key West, Florida, June 16,1898. At seven Indiana sig-nalled to take formation, and the naval vessels and transports took their positions as previously ordered, the Osceola towing this vessel, being on extreme left flank.
“Santiago de Cuba, July 2, 1898. Reporting alongside U. S. F. S. New York at 11.20 p. m., and took position on center picket S. of Morro.
“Sunday, July 3, 1898. On picket Santiago, Siboney, in sea fight off Santiago and Guantanamo.”
It also appears from the same communication that the Ericsson remained with Admiral Sampson’s fleet until August 10 thereafter.
It thus appears that by signal from the Indiana, presumably under orders from the commander in chief, the Ericsson was, in effect, detached from the torpedo flotilla under the command of the claimant, and was directed to proceed under convoy of the Osceola to Santiago de Cuba, where she arrived July 2, 1898, and reported to the commander in chief, and was assigned to picket duty south of Morro, and on July 3, 1898, participated in the engagement off Santiago.
Thereafter, July 9, 1898, the claimant was ordered by the commander in chief to proceed to Key West, Fla., and report to Commodore Remey, U. S, N., for duty as ordnance officer of the fleet.
August 13, 1898, the claimant, as lieutenant-commander, commanding the torpedo-boat flotilla, and “in accordance with telegraphic instructions from the Navy Department forwarded by the commanding officer of the Navy base at Key West, Fla,” directed the commanding officer of the Ericsson to proceed with the boat under his command to Hampton Roads, Virginia; and similar orders appear to have been given by him to each of the vessels under his command. On October 21, 1898, the claimant was, by order of the Secretary of the Navy, detached from the torpedo-boat flotilla and ordered to proceed to Porto Rico for duty on the U. S. S. Caesar.
The claimant’s contention is that, inasmuch as he was the commanding officer of the torpedo-boat flotilla, he is entitled to one-fiftieth part of any bounty awarded to the Ericsson, such bounty being provided for by Revised Statutes, section *465 4635, and apportioned in the same manner as prize money under section 4631, the second paragraph of which reads:.
“To the commending officer of a division of a fleet or squadron, on duty under the orders of the commander in chief of such fleet or squadron, a sum equal to one-flftieth part of any prize money awarded to a vessel of such division for a capture made while under his command, such -fiftieth part to be deducted from the moiety due to the United States, if there be such moiety, otherwise from the amount awarded to the captors; but such fiftieth part shall not be in addition to any share which may bo due to the commander of the division, and which he may elect to receive, as commander of a single ship making or assisting in the capture.”
To entitle the claimant to recover, as contended, it must appear not only that he was the- commander of a division under the fleet of Rear-Admiral Sampson, but that the destruction of the Spanish vessels off Santiago was effected, in part, by a vessel of such division “while under his command.” Although it has been held that the Spanish fleet in that engagement was of inferior force to the vessels of the United States, no moiety accrued to the United States, as there would have under section 4630 had the vessels been captured, condemned, and sold as prize instead of destroyed. In this respect section 4635, providing for the payment of bounty from the Treasury of the United States for the destruction of vessels of war, differs from section 4630, providing for an equal division- of the net proceeds, between the Government and the captors, of all property condemned as prize when such prize was of inferior force to the vessels of the United States. Under the former no moiety accrues to the United States, while under the latter one-half of the net proceeds accrues to the Treasury, from which the share of the commanding officer of a division of a fleet may be deducted. It is only where such moiety accrues and is “due to the United States” that pa3onents are made therefrom “to the commanding officer of a division of a fleet. Hence, if entitled to recover as the commander of a division in the fleet of Rear-Admiral Sampson, the claimant will have to be paid from the amount awarded to the Ericsson.
Neither the claimant nor the other vessels in his division participated in the engagement off Santiago.'
*466 It is clear and undisputed that the Ericsson was under the immediate command of the commander in chief at the time of the battle, and that while so serving- was not subject to the orders of the claimant; and not being subject to his orders, was not under his command at the time of the engagement, within the meaning and intent of the paragraph quoted.
The controlling words are ‘£ any prize money awarded to a vessel of such division for a capture made while under his command.” The words “while under his command” must be construed to mean that the movement of the vessel during the engagement was subject to his orders. The claimant was in no way responsible for the movement of the Ericsson after she reported to the commander in chief, and without some share in the responsibility for her participation in the engage • ment he should not be permitted to share in the bounty awarded to her.
The conclusion of the court is that the motion be overruled and the petition be dismissed, which is accordingly done; and the auditor of the court will be governed accordingly in his investigation and report.